United States District Court
Southern District of Texas
**ENTERED**
August 15, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE KP ENGINEERING, LP <br><br> Debtor. <br><br><br> CREDOS INDUSTRIAL SUPPLIES & RENTALS, LLC, <br><br> Appellant, <br><br> VS. <br><br> TARGA PIPELINE MID-CONTINENT WESTTEX LLC, <br><br> Appellee. | § § § § § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. H-22-00664 <br> BANKRUPTCY CASE NO. 19-03707 |

## MEMORANDUM AND OPINION

Credos Industrial Supplies & Rentals, LLC, was a subcontractor for the bankruptcy debtor, KP Engineering. Credos had been hired by KP Engineering before the bankruptcy to help build a cryogenic natural gas processing plant (the "Johnson Plant") for Targa Pipeline Mid-Continent WestTex LLC. Midway through the project, KP Engineering stopped paying its subcontractors, including Credos. Targa then ended its contract with KP Engineering but asked Credos to stay on and complete the project. In exchange, Targa promised that it would pay Credos any unpaid KP Engineering invoices. Targa paid nine of eleven outstanding invoices. Several weeks later, and after Credos had substantially completed work on the project, Targa informed Credos that it would not pay the two final invoices, totaling $930,507.76.

Credos initiated an adversary proceeding against Targa in KP Engineering's bankruptcy proceeding, seeking to recover the $930,507.76 in unpaid invoices based on claims of unjust enrichment and quantum meruit. Targa moved to dismiss Credos's complaint, which Credos

amended, and Targa again asserted its motion to dismiss. The bankruptcy court dismissed the amended complaint, with prejudice. Credos appeals the bankruptcy court's judgment. Based on the briefs and the applicable case law, this court affirms and dismisses the appeal, for the reasons set out below.

**I.    Background**

In August 2017, KP Engineering entered into a $116,257,799 contract with Targa to engineer and build the Johnson Plant, a cryogenic natural gas processing plant in Midland County, Texas. (App'x 93). KP Engineering hired subcontractors to help with the construction. In March 2018, KP Engineering hired Credos and agreed to pay it on "a time and materials basis." (*Id.*). Credos worked on the project as a KP Engineering subcontractor from March 28, 2018, to August 3, 2018, and submitted invoices to KP Engineering on a weekly basis. (*Id.* at 94).

KP Engineering paid Credos for its work on the Johnson Plant through May 2018. (*Id.*). KP Engineering did not pay Credos for the work it did from June to August 2018. By the time Targa ended its contract with KP Engineering, the firm owed Credos $2,329,830.86 in outstanding invoices. (*Id.* at 96–97).

On July 25, 2018, Scottie Johnson, Credos's owner, informed David Scarborough, Targa's job supervisor, that Credos would no longer work on the Johnson Project without pay. Scarborough told Johnson that Targa would pay the outstanding KP Engineering invoices if Credos remained on the job. (*Id.* at 95).

That same day, Regina Johnson, Credos's Administrative Manager, emailed Scarborough to memorialize the agreement. She attached "the first of 8 outstanding invoices" and wrote, "Per your conversation with Scottie at 3:00 pm today, we understand that Targa has committed to pay the Credos Fabrication outstanding invoices directly as soon as possible within the next week. I

will be forwarding the remainder of the outstanding invoices in the following emails. As a result of this understanding, Credos Fabrication's employees will resume work on 7-26-18 at 6:30 am." (*Id.* at 376).

On July 31, 2018, Scarborough forwarded the invoices to Amanda Lopez, a Targa employee, writing "VERY high priority . . . These folks have invoices that are well past due (no fault of Targa) but we made a commitment to remedy. Clark White has authorized." (*Id.* at 382).

On August 3, 2018, Targa fired KP Engineering from the Johnson Project, citing KP Engineering's failure to pay its subcontractors as one of its reasons for ending their contract. (*See id.* at 597). Credos continued to work on the project under its new agreement with Targa. Targa paid Credos for the work it did under this agreement after July 26, 2018. Credos sent Targa the remaining invoices for unpaid work from before July 26, 2018. Targa paid Credos for nine of the eleven invoices that Credos sent. Scarborough informed Credos "[a] few weeks" later that Targa would not pay for two of the unpaid invoices, totaling $930,507.76.

In August 2018, Hancock Mechanical, LLC, another subcontractor that worked on the Johnson Plant, sued Targa and KP Engineering in state court for unpaid work on the project. In October 2018, Targa filed third-party and interpleader claims in the state-court case, joining as third-party defendants more than 30 Johnson Plant subcontractors that had filed liens on the Johnson Plant, including against Credos. Credos counterclaimed against Targa to recover the unpaid invoices, alleging unjust enrichment and quantum meruit.

On August 23, 2019, KP Engineering filed for bankruptcy in the Southern District of Texas. That same day, KP Engineering removed the pending state-court action to the district court for the Western District of Texas and moved—unopposed—to transfer the case to the Southern District of Texas. The case, including Credos's counterclaim against Targa, was referred to the bankruptcy

court as an adversary proceeding in December 2019, under the bankruptcy court's 28 U.S.C. § 1334 "related to" jurisdiction.

Twenty-one months later, in May 2021, Credos moved to remand its counterclaim to state court. (*Id.* at 24). Targa opposed the motion and moved to dismiss Credos's claims. (*Id.* at 25). The bankruptcy court held a hearing on the motions and gave Credos leave to amend before ruling on the motions. (*Id.* at 82). Credos amended its complaint, and the bankruptcy court held a second hearing on the motions. The bankruptcy court held that it had jurisdiction under 28 U.S.C. § 1334, denied the motion to remand, and granted the motion to dismiss, "find[ing] that the complaint fail[ed] to state a claim for either unjust enrichment or quantum meruit." (*Id.* at 679). The court denied leave to amend for a second time, finding amendment futile "given Credos's previous opportunity to amend." (*Id.* at 679–70). This appeal followed.

## II.     The Legal Standards

### A.     Appellate Review

"[T]raditional appellate standards" apply to the district court's review on an appeal from a bankruptcy court's judgment or order under 28 U.S.C. § 158(a)." *Stern v. Marshall*, 564 U.S. 462, 475 (2011). A bankruptcy court's grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo. *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021).

### B.     Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a0(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does

4

not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III. Analysis

Credos pleaded only quantum meruit and unjust enrichment as the basis for recovering the $930,507.76 in unpaid invoices from Targa. Each is addressed in turn.

#### A. Quantum Meruit

"Quantum meruit is an equitable remedy . . . based on the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quoting *Colbert v. Dallas Joint Stock Land Bank*, 102 S.W.2d 1031, 1034 (Tex. 1937)). "[F]ounded on unjust enrichment," quantum meruit "will be had when non payment for the services rendered would 'result in an unjust enrichment to the party benefited by the work." *Id.* To recover under quantum meruit, the plaintiff must prove that: "(1) valuable services were rendered; (2) to the party sought to be charged; (3) which services were accepted by the party sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient." *Collins v. Aikman Floorcoverings, Inc. v. Thomason*, 256 S.W.3d 402, 407–08 (Tex. App.-San Antonio 2008, pet. denied).

"Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Vortt*, 787 S.W.2d at 944. "If an express contract covers the services or materials at issue, recovery under quantum meruit generally is prohibited." *Kam v. Karedia*, No. 03-18-00526-CV, 2019 WL 6831551, at *3 (Tex. App.-Austin Dec. 13, 2019); *see also Texas A&M Concrete, LLC v. Brae Burn Constr. Co., Ltd., L.L.P.*, No. 01-20-00438-CV, 2022 WL 2441751, at *9 (Tex. App.-Houston [1st Dist.] June 30, 2022) ("Under Texas law, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied through a quantum-meruit claim generally may do so only when there is no express

contract covering those services or materials."). "This rule not only applies when a plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when a plaintiff is seeking to recover 'from a third party foreign to the original [contract] but who benefitted from its performance.'" *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App. 2007) (quoting *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.-Houston [14th Dist.] 2004, pet. denied)).

Targa argues that the quantum meruit claim cannot succeed because Credos is seeking payment for "services or materials furnished" that are covered by Credos's express agreements, first with KP Engineering, then with Targa. Credos argues that the court may not consider Credos's contract with KP Engineering in deciding the Rule 12(b)(6) motion, because that contract was not attached to the complaint and is outside the complaint allegations.

The court does not need to examine the terms of Credos's contract with KP Engineering to find that Credos has not plausibly alleged a claim for quantum meruit. Credos alleged that: it was "hired by KP [Engineering] to supply mechanical fabrication labor and welding services" for work on the Johnson Plant "on a time and materials basis"; KP Engineering issued two purchase orders "to Credos for work at the Johnson Plant" for $2,500,000; Credos "submitted invoices for its work to KP [Engineering] on a weekly basis"; and KP Engineering paid some, but not all, of those invoices. Credos's complaint alleges that KP Engineering had an obligation to pay Credos for services or materials that Credos furnished to KP Engineering, and Credos attached KP Engineering's contract with Targa as an exhibit to its complaint. The court can consider documents attached to the complaint. *Lincoln Prop. Co.*, 920 F.3d at 900. That contract states that: all subcontracts between KP Engineering and its subcontractors "shall be consistent with the terms of this Agreement"; "[a]ll [w]ork performed for [KP Engineering] by a Major Subcontractor . . . shall

7

be pursuant to a written agreement between the Contractor and Subcontractors"; and that KP Engineering "fully indemnif[ied]" Targa from any "failure of [KP Engineering] to make payments to any subcontractor in accordance with the respective subcontract." (App'x 123–24, 164).

Credos's allegations and KP Engineering and Targa's contract make clear that Credos had a contractual relationship with KP Engineering, not with Targa, until Targa ended its contract with KP Engineering. That contractual relationship eliminates the availability of equitable relief against Targa for services rendered during the period of Credos's contract with KP Engineering.

Credos argues that its contract with KP Engineering is irrelevant because Targa promised to pay the unpaid invoices in exchange for Credos's continued work on the project. This promise does not make a quantum meruit claim viable. If anything, the allegations suggest that Credos has a breach of contract claim against Targa, not a claim for equitable relief.

*Pepi Corp. v. Galliford* is instructive. In *Galliford*, the defendant hired a contractor to build a restaurant, and the contractor hired Galliford to do the electrical work. 254 S.W.3d at 459. The contractor never paid Galliford and filed for bankruptcy two years after the electrical work was completed. *Id.* Galliford sued the defendant, who owned the property where the restaurant was built, and sought recovery under quantum meruit. The court explained that "[a] plaintiff seeking to recover the reasonable value of services rendered or materials supplied is precluded from recovering in quantum meruit if there is an express contract *that covers those services or materials* and if no exception to the general rule applies." *Id.* at 462 (emphasis in original). Because Galliford did not contract with the defendant property owner, but rather with the contractor the

defendant hired, to do the work on the defendant's property, the court held that Galliford was barred from recovering under quantum meruit.

As in *Galliford*, Credos alleged that it entered into a contract with KP Engineering that covered the services and materials Credos provided. That contract bars Credos's claims unless one of the "three exceptions to the general rule that an express contract bars recovery under quantum meruit" applies. *Id.* "First, recovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (emphasis in original). This exception does not apply because Credos has fully performed under the contract and because Targa was not the breaching party under the contract with KP Engineering. Second, "[r]ecovery in quantum meruit is sometimes permitted when a plaintiff partially performs an express contract that is unilateral in nature." *Id.* at 937. This exception does not apply because Credos fully performed and entered into a bilateral contract. Finally, "a breaching plaintiff in a construction contract can recover the reasonable value of services less any damages suffered by the defendant if the defendant accepts and retains 'the benefits arising as a direct result of the plaintiff's partial performance.'" *Galliford*, 254 S.W.3d at 463 (quoting *Truly*, 744 S.W. at 937). Again, Credos neither partially performed nor breached its contract with KP Engineering. Because no exception applies, Credos's allegations—taken as true—show that the quantum meruit claim is barred by Credos's contract with KP Engineering.

Even if the contractual bar was not present, a quantum meruit claim would still fail because Credos repeatedly failed to plead a necessary element of the claim. "The fourth element of a claim for quantum meruit requires a plaintiff to have 'reasonably notified the person sought to be charged that the plaintiff[,] in performing such services[,] was expecting to be paid by the person sought to

9

be charged." *In re All Texas Elec. Contractors, Inc. v. NSPS Metals LLC*, No. 20-34656, 2022 WL 162786, at *11 (Bankr. S.D. Tex. Jan. 18, 2022) (citation omitted). "In determining whether this element is satisfied, 'the key consideration is the timing of when the plaintiff informs the defendant that it expects to be paid directly by the defendant.'" *Id.* (quoting *Sys. One Holdings LLC v. Campbell*, No. 18-cv-54, 2018 WL 4290459, at *6 (S.D. Tex. Aug. 21, 2018)). "The Court must focus on 'what the recipient of the services knew or should have known at the time the services were accepted." *Campbell*, 2018 WL 4290459, at *6 (emphasis omitted) (quoting *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.-Houston [14th Dist.] 2003)).

Credos did not allege any facts to support an inference that it notified Targa, *before* beginning work on the Johnson Plant, that it "expected to be directly paid by [Targa]—a party with whom [Credos] did not have a contract." *Id.* "There are no facts pled showing that [Targa] knew or should have known that [Credos] knew or should have known that [Targa] expected payment directly from [Targa] before [Credos] began its work." *Id.* (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (quantum meruit was not an available remedy when there was no evidence that subcontractor made the city aware, before beginning the work, that the subcontractor expected payment directly from the city)). Credos sought payment from Targa *after* KP Engineering failed to timely pay. Absent facts showing notice, Credos's quantum meruit claim cannot proceed.

### B. Unjust Enrichment

"Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which would be unconscionable to retain." *Tex. Integrated*

10

*Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.-Dallas 2009, pet. denied).[1]

Targa first argues that Credos's unjust enrichment claim fails because to state a claim for unjust enrichment, a plaintiff must allege that "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels*, 832 S.W.2d at 41. Targa quotes a recent Fifth Circuit case, *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, which states that "[u]nder Texas law an unjust enrichment claim ***requires showing*** that one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" (Docket Entry No. 13, at 32–33 (emphasis in original) (quoting *Digital Drilling*, 965 F.3d 365, 378 (5th Cir. 2020)).

In *Digital Drilling*, the Fifth Circuit noted that some Texas courts have upheld unjust enrichment claims "when the person sought to be charged has wrongfully secured a benefit *or has passively received* one which it would be unconscionable to retain." 965 F.3d at 380 (emphasis in original) (quoting *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.-San Antonio 2004, pet. denied)). The Fifth Circuit recognized that Texas law appears to "recognize[] two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit" based on fraud, duress, or undue advantage. *Id*. The court did not take a position on whether an unjust enrichment claim is available only on a showing of fraud, duress, or the taking of undue advantage. Instead, the court stated that, "whatever species of unjust enrichment claims might theoretically be available in Texas, the proper object . . . is the unjust enrichment claim *actually alleged*." *Id.* (emphasis in

---

[1] It is unclear under Texas law whether unjust enrichment is an independent cause of action, or simply a theory of recovery. *Compare Galliford*, 254 S.W.3d at 460 ("Unjust enrichment is an independent cause of action."), *with RDG Ltd. P'ship v. Gexa Corp.*, No. 14-04-00679-CV, 2005 WL 949171, at *3 (Tex. App. 2005) ("Unjust enrichment is not a distinct independent cause of action, but a theory of recovery."). Assuming that unjust enrichment is an independent cause of action, Credos's claim still fails on other grounds.

11

original). If a plaintiff's unjust enrichment claim is based on a defendant's wrongful securing of a benefit, then a plaintiff must plead facts showing fraud, duress, or the taking of undue advantage. If a plaintiff's unjust enrichment claim is based on "passive receipt of a benefit that would be unconscionable to retain," then the plaintiff does not need to plead or prove that the defendant acted wrongfully.

Credos's claim is not based on fraud, duress, or undue advantage. Instead, Credos alleges that Targa obtained a benefit—the construction of the Johnson Plant—at Credos's expense. Assuming that this type of unjust enrichment claim is available under Texas law, the claim fails for at least two reasons.

First, as with Credos's quantum meruit claim, "claims for . . . unjust enrichment sound in quasi-contract or contract implied in law. There can be no recovery based on [unjust enrichment] when the same subject matter is covered by an express contract." *Baxter v. PNC Bank Nat. Ass'n*, 541 F. App'x 395, 397 (5th Cir. 2013); *see also Adidas Am. Inc. v. Shoebacca, Ltd.*, No. 3:20-CV-03248-N, 2022 WL 2704051, at *3 (N.D. Tex. July 12, 2022); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). There is no "need for a quasi-contract claim" "when a contract 'covers the subject matter of the parties' dispute.'" *Baxter*, 541 F. App'x at 397. Credos's contract with KP Engineering allegedly covers the unpaid invoices. A proper remedy is a breach of contract claim, not a claim for unjust enrichment.

Second, an unjust enrichment claim requires Credos to allege that Targa obtained benefits unjustly. Credos's allegations do not suggest that Targa was unjustly enriched. Credos alleged that "[o]n August 3, 2017, KP [Engineering] entered a $116,257,799.00 contract with Targa to engineer and build [the Johnson Plant]." Credos alleged that "On August 3, 2018[,] Targa terminated KP [Engineering] from the Johnson project for cause . . . after paying KP [Engineering]

12

$102,945,601.44." Credos attached a "schedule of receipts" showing that from August 2017 to May 2018, KP Engineering received at least $97,798,321.36 from Targa. (App'x 401).

The complaint allegations and the attached materials show that Targa paid for construction work on the Johnson Plant either by paying KP Engineering or by paying Credos directly. Targa paid KP Engineering for the work Credos performed through August 3, 2018; KP Engineering, not Targa, was supposed to pay the subcontractors for invoices submitted at least through August 3, 2018. KP Engineering did not pay the subcontractors. Targa then paid Credos for the work it did after Targa ended its contract with KP Engineering. (*Id.* at 96 ("Credos regularly sent invoices to Targa covering work performed by Credos at the Johnson and Driver Plants. Targa regularly made prompt payments on those invoices.")). If any party was unjustly enriched, it was KP Engineering, not Targa. Credos's unjust enrichment claim fails.

### C.     Leave to Amend

Credos alleged a harm—that Targa breached its promise to pay KP Engineering's outstanding debts to Credos—but did not allege any cognizable cause of action to redress that harm. Credos asserted claims for equitable relief, instead of claims for breach of contract. As Targa notes, "Credos [first] worked under an express agreement with KP [Engineering]. Then, Credos worked under an agreement with Targa." (Docket Entry No. 13, at 24). Credos agreed to continue working with Targa because Targa allegedly promised to pay for any future expenses incurred *and* promised to cover KP Engineering's outstanding debts to Credos. Credos alleges that Targa reneged on that promise by paying only some of the invoices.

It is unclear if Credos's agreement with Targa is captured in any formal, written, contract. Emails attached to Credos's complaint suggest conflicting understandings of Targa's obligations. An email from Credos to Scarborough, Targa's project manager, stated that "Targa . . . committed

13

to pay the Credos Fabrication outstanding invoices directly as soon as possible within the next week." (App'x 376). A later email from Scarborough stated, however, that "Credos decided to stay with [Targa] even after they knew that we couldn't/wouldn't cover all of their invoices to KPE. Those unpaid invoices total nearly $1MM." (*Id.* at 597).

Credos's allegations suggest that it may have a breach of contract claim against Targa. However, it has been nearly four years since Credos filed its counterclaim against Targa and Credos never amended its complaint to assert such a claim, even after the bankruptcy court gave Credos leave to amend. Credos did not ask the district court for another opportunity to amend. Credos has not asked this court for an opportunity to replead. But even if it did, "[a]n attempt to amend one's pleadings in an appellate brief comes too late." *Hanson v. Town of Flower Mound*, 679 F.2d 497, 504 (5th Cir. 1982).

### IV. Conclusion

The bankruptcy court's order granting Targa's motion to dismiss Credos's counterclaim, Bankr. (Docket Entry No. 318), is affirmed. This appeal is dismissed.

SIGNED on August 15, 2022, at Houston, Texas.

                                                    _____
                                                              Lee H. Rosenthal
                                                    Chief United States District Judge